IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GWEN SHEPHERD,

        Plaintiff,

vs.                                                   CIVIL NO.   01-336 MV/LFG-ACE

OCWEN FEDERAL BANK FSB
and AURORA LOAN SERVICING
INCORPORATED,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION TO COMPEL

THIS MATTER is before the Court on Ocwen Federal Bank, FSB's ("Ocwen") oral motion to compel discovery. While no formal motion was filed, the oral request for discovery was discussed in a telephonic conference conducted with counsel and Court on September 10, 2001.[1]

Ocwen seeks to compel Plaintiff, Gwen Shepherd ("Shepherd"), to produce (a) copies of Shepherd's last four years of credit card statements; (b) copies of Shepherd's last four years of checks or check registers; and (c) a release to obtain Shepherd's credit report. This request is opposed.

The Court considers Ocwen's request and memorandum brief, together with Shepherd's response in opposition. No reply is necessary. This matter may be resolved on the parties' submissions.

---

[1] So as to accomplish the goals of the Civil Justice Reform Act, 28 U.S.C., § 471 *et seq.*, that is, to expedite the ultimate disposition of litigation and to reduce the costs, judges in the District of New Mexico encourage the use of telephonic hearings to resolve discovery disputes, often without the need to file formal pleadings. Requests for telephonic hearings may be generated by letter, facsimile or a request to the Court's chambers. Here, Ocwen submitted by facsimile a joint motion to compel discovery and to extend the time to file expert reports, and during the course of a telephonic hearing on that motion, the issue concerning the present motion was discussed. Due to the nature of the motion, however, the Court ordered expedited briefing.

**Background**

Shepherd, alleges that Ocwen's acts and omissions constitute a violation of the Federal Fair Debt Collection Practices Act, New Mexico's Unfair Trade Practices Act, breach of contract and intentional infliction of emotional distress. She alleges that Ocwen's conduct constitutes not only statutory violations, but that she has suffered actual damages in excess of statutory penalties. Indeed, Shepherd values the emotional harm component of her claim at $350,000, and contends that Ocwen's alleged unconscionable and illegal conduct adversely affected her credit report to the extent that "Ms. Shepherd has been unable to obtain credit for an automobile purchase," and that the emotional harm has been so devastating that "it caused emotional distress to the extent that . . . [Shepherd's] hair has fallen out. She now must wear a wig." (Shepherd's letter to Ocwen)

In an effort to obtain information relevant to Shepherd's claims for emotional distress and damage to her credit and reputation, Ocwen seeks information necessary for its investigation and evaluation of the claims, and for its own defense.

**Analysis**

Some of the records sought by Ocwen are patently relevant. For example, Ocwen requests that Shepherd execute a release so that Ocwen can obtain copies of Shepherd's credit reports and credit history. Shepherd, has previously refused to give a release, contending that disclosure of this information would constitute a breach of her right of privacy. However, Shepherd's credit is clearly an issue in this case. Shepherd alleged damage to her credit reputation and contends that as a result of Ocwen's acts and omissions, she has been denied credit, allegedly for an automobile purchase based on Ocwen's adverse comments reported to credit agencies.

Ocwen's request for credit information is similar to requests for information relating to a plaintiff's emotional and psychological background when the plaintiff asserts a claim for damages arising from emotional injury.

Courts have held:

> The majority of courts . . . will not require a plaintiff to submit to a medical examination unless, in addition to a claim for emotional distress damages, one or more of the following factors is also present: (1) plaintiff has asserted a specific cause of action for intentional or negligent emotional distress; (2) plaintiff has alleged a specific mental or psychiatric injury or disorder; (3) plaintiff has claimed unusually severe emotional distress; (4) plaintiff has offered expert testimony in support of her claim for emotional distress damages; and (5) plaintiff concedes that her mental condition is in controversy.

Fox v. Gates, Corp., 179 F.R.D. 303, 307 (D. Colo. 1998).

Here, Shepherd made a specific claim for damages to her credit history and reputation. She linked this claim to a separate common law claim for intentional infliction of emotional distress. Her claim for damages, allegedly caused by Ocwen's misconduct, resulted in unusually severe emotional distress, which, according to Shepherd, was so significant that it caused all of her hair to literally fall out. Shepherd identified expert witnesses to support her claims.

Given these factors and the liberality of Fed. R. Civ. P. 26(b)(1) which allows a party to obtain discovery regarding any matter not privileged which is relative to the subject matter in the pending action, it was improper for Shepherd to deny Ocwen's request. Therefore, the Court orders Shepherd to execute a release and provide identification information necessary to allow Ocwen access to her credit reports.

In support of Ocwen's request for other financial information, including credit card statements, checks or check registers, Ocwen argues that these matters are relevant to Shepherd's

lawsuit. Shepherd's initial disclosures, under Rule 26, state, "Damages are for harm to Plaintiff's good standing with credit agencies, mental suffering and damages provided under the Fair Debt Collection Practices Act." Shepherd has disclosed that she will offer expert testimony in support of her damage claims. Ocwen, in turn, retained an expert witness who requested this information so as to complete his expert analysis and report.

Ocwen argues that Shepherd's age, health, habits and mental and emotional condition are all relevant in determining the extent of her claimed pain and suffering. Additionally, "inquiry into the effect of a claimed tort on a plaintiff's behavior and life-style may be relevant to a claim of emotional injury." 13 Am. Jur. 3d 111 § 33.

Ocwen appends a letter from its expert witness, Dr. William Foote, who is a forensic and clinical psychologist retained to evaluate Shepherd's claims. He requests this financial information for his expert evaluation. Dr. Foote writes:

> The way that a person spends their money (for example on recreational activities versus medical bills) may indicate what they are capable of doing or what their interests are. I have no interest in invading the plaintiff's privacy any more than absolutely necessary in this matter, however, such financial records can be quite helpful for the psychologist to determine the persons' interests, capabilities and activities.

It is axiomatic that an individual's personal financial history is a very private matter. However, when one initiates a lawsuit and alleges that an opposing party's conduct caused specific damage to credit history and reputation, the alleging party should not be permitted to withhold information necessary to evaluate the party's claims by refusing access to this information. Shepherd is denying Ocwen the right to discover evidence that is clearly necessary to meet the proofs at trial. A plaintiff may not assert a right to damages and yet deny the opposing party an opportunity to

challenge the legitimacy of a claim.

The Court recognizes that an examination into personal financial matters is intrusive. However, it was Shepherd who initiated this lawsuit and who is making specific allegations concerning damage she has suffered. She has placed this matter at issue. When a plaintiff makes a particular claim for injury, the condition is in controversy and a defendant is entitled to conduct its own examination and evaluation into the claim. *See, e.g.*, Thiessen v. General Electric Capital Corp., 178 F.R.D. 568 (D. Kan. 1998); Schlagenhauf v. Holder, 379 U.S. 104, 85 S. Ct. 234 (1964). Thus, in balancing a party's right to be free from intrusive examinations into private matters, with an opposing party's right to obtain evidence necessary to investigate and evaluate claims, and to defend itself, the balance must tip in favor of discovery.

Shepherd's credit and check purchases can provide valuable information to support or refute her damage claims. For example, if Shepherd's financial information shows that she was living within her income, made timely payments to her creditors, had savings and the capability of buying a new automobile, then evidence that she was denied financing for the car due to erroneous credit information strengthens her case and adds support to her contentions. Similarly, evidence that Shepherd's lifestyle changed after the incidents in question can be used to support her claims. For example, if Shepherd maintained an active social life, i.e., dinners out, weekend trips, vacations, and if after the incidents she stopped going out or traveling, these changes would make her contentions more probable. On the other hand, if Shepherd's checks and credit card activity demonstrate that she was living beyond her means, had insufficient cash flow, was not paying her creditors, or was not paying credit card bills, there would be a legitimate reason as to why she was denied credit for an automobile purchase. So, too, if there were no changes in her spending habits, recreation or social

5

activities after the incidents, her claims of severe emotional distress would be less likely.

If Shepherd's spending habits evidenced a lifestyle inconsistent with someone suffering a serious emotional injury, or someone who is so devastated by the emotional trauma experienced, then the evidence is not only useful, but necessary to refute the claims. Given the nature, extent and claimed duration of injuries allegedly suffered, and Shepherd's own evaluation of the value of her claims, the information sought by Ocwen is relevant. The Court finds that the requested information is discoverable.

However, the Court must be careful in ensuring that Ocwen does not overreach. The request is for financial information covering the last four years. The note signed by Shepherd is dated July 1998. A review of Shepherd's records for a period of two years prior to July 1998 and two years subsequent to July 1998 is a reasonable period that would provide valuable comparisons.

The Court will limit disclosure of the information. Information produced by Shepherd may only be used in reference to the litigation in this case. Upon completion of the litigation, whatever financial documentation produced shall be returned by defense counsel to Shepherd without retaining any photocopies. Additionally, Ocwen's expert must similarly return any financial information submitted to him for his evaluation.

The Court will require Shepherd to produce canceled checks or, alternatively, legible check registers showing all check activity for the period July 1996 through July 2000.[2] Shepherd will be required to produce credit card statements for the same period, alternatively, to disclose the name, address and account number of her credit card accounts to Ocwen and to execute and deliver an

---

[2] If Ocwen wants canceled checks and the financial institution imposes a fee for retrieving and producing the checks, Ocwen is responsible for payment of the fee.

authorization allowing Ocwen to obtain the information directly from the credit card companies. To the extent that the credit card company and credit reporting agency require additional information to produce records, i.e., date of birth, social security number, mother's maiden name, etc., Shepherd shall produce the information to defense counsel. This information shall be provided within twenty days.

                                                                               _____
                                                                               Lorenzo F. Garcia
                                                                               United States Magistrate Judge